# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 2 C 2508 | **DATE** | 9/30/2004 |
| **CASE TITLE** | Benjamin Binkley et al vs. Edward Hospital et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **Enter MEMORANDUM, OPINION AND ORDER: Motion [49-1] is granted. Motion [52-1] is denied. Motion [65-1] is granted. Motion [50-1] is granted. Motion [54-1] is denied. Counts II and XIII are reinstated against Defendant Shoba Sinha. Counts I and XIII are reinstated against Defendant Riaz Baber. Status hearing set for 10/21/2004 @ 9:00 a.m.**

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | SEP 30 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | 107 |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| TSA | courtroom deputy's initials | | date mailed notice | |
| | | | mailing deputy initials | |

2004 SEP 30 PM 2:36

U.S. DISTRICT COURT
CLERK

Date/time received in central Clerk's Office

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

DOCKETED

SEP 3 0 2004

BENJAMIN BINKLEY, a minor, by his parent )
and next best friend, REBECCA BINKLEY; )
and REBECCA BINKLEY, individually, )
                                     )
        Plaintiffs,           )    **No: 02 C 2508**
                                       )
        v.                  )
                                       )    **Judge Wayne R. Anderson**
EDWARD HOSPITAL d/b/a EDWARD )
HOSPITAL & HEALTH SERVICES, an )
Illinois not-for-profit corporation; CHARTER )
LINDEN OAKS BEHAVIORAL HEALTH )
SYSTEM d/b/a LINDEN OAKS HOSPITAL, )
an Illinois corporation; ILLINOIS )
DEPARTMENT OF CHILDREN AND )
FAMILY SERVICES; DuPAGE COUNTY )
HEALTH DEPARTMENT; RIAZ BABER, M.D., )
BRUCE ANDERSON; SHOBA SINHA, M.D.; )
JENNIFER BEISNER; STEPHANIE BRENNAN; )
MARGARET JONES; GLORIANA ACOLATSE; )
and DEBBIE McEVILLY, )
                                     )
        Defendants.       )

## MEMORANDUM OPINION AND ORDER

    This matter is before the Court on the motions of Defendants Stephanie Brennan, Edward Hospital, Linden Oaks Hospital, Bruce Anderson, DuPage County Health Department, Jennifer Beisner, Illinois Department of Children and Family Services, Debbie McEvilly, Gloriana Acolatse, and Margaret Jones to dismiss the Plaintiffs' First Amendment Complaint pursuant to Fed. R. Civ. P. 12(b)(6). For the following reasons, the motions are granted in part and denied in part.

107

Plaintiffs Benjamin Binkley ("Benjamin"), a minor, and Rebecca Binkley ("Mrs. Binkley"), his mother (hereinafter collectively referred to as "Plaintiffs") have filed their First Amended Complaint ("Complaint"). In this Complaint, the Plaintiffs allege that on March 23, 2003, Benjamin presented to the emergency room at Linden Oaks Hospital, where he was examined by the on-call physician, Dr. Shoba Sinha ("Dr. Sinha"). Dr. Sinha allegedly determined that Benjamin had an emergency medical condition and that such a condition was mental illness or emotional disturbance of such severity that hospitalization was necessary. At approximately 2:30 a.m. on March 23, 2003, Benjamin was admitted to the locked adolescent inpatient unit at Linden Oaks Hospital.

The next day, Mrs. Binkley allegedly reported to Diana Halley ("Halley"), an employee of Linden Oaks Hospital, that Benjamin's health insurance would expire at midnight on the tenth day of admission and that Mrs. Binkley believed Benjamin was in need of long term residential care for his severe mental illness. Halley allegedly noted in Benjamin's medical chart that his insurance would soon be exhausted. Plaintiffs further allege that, due to Mrs. Binkley's inability to pay for extended medical care, Linden Oaks ceased all efforts to provide reasonable and necessary medical care to Benjamin. In addition, Plaintiffs contend that Dr. Sinha and Dr. Riaz Baber ("Dr. Baber") falsified Benjamin's medical record in order to make Benjamin's severe mental illness appear stabilized, when in fact it was not. During the time that Benjamin was admitted in Linden Oaks Hospital, Mrs. Binkley allegedly made multiple requests to Drs. Baber, Sinha, and Bruce Anderson ("Anderson"), the facility director of Linden Oaks Hospital,

for a transfer of Benjamin to a state operated mental health facility; however, these requests were refused.

On April 5, 2000, Benjamin's attending physician, Dr. Baber, informed Mrs. Binkley that Benjamin's medical condition was stable and that Benjamin would be discharged from Linden Oaks Hospital the next day. Plaintiffs, however, allege that Benjamin was on suicide and assault precautions and was receiving fifteen minute checks by the hospital staff to ensure his safety and the safety of others.

Mrs. Binkley refused to accept Benjamin for discharge on April 6, 2000 believing that he suffered from severe unstabilized mental illness. On April 7, 2000, Mrs. Binkley was notified by Anderson and Paula Albright ("Albright"), associate general counsel for Edward Hospital, that if Mrs. Binkley did not accept Benjamin for discharge on that date, Albright would notify the Illinois Department of Children and Family Services ("DCFS") that Mrs. Binkley was neglecting her child. Plaintiffs further allege that Albright and Anderson notified Mrs. Binkley that they would pursue her for present and future unpaid medical bills.

On April 8, 2000, allegedly at the request of Anderson and Albright, DCFS investigator Margaret Jones ("Jones") recommended that Mrs. Binkley be "indicated for child abuse, child abandonment, and medical neglect of Benjamin," and that Benjamin be discharged from the hospital and placed in jail. Furthermore, Plaintiffs allege that Sheryl Duer ("Duer"), an employee of Linden Oaks Hospital, contacted Stephanie Brennan ("Brennan"), an employee of the DuPage County Health Department ("Health Department"), to evaluate Benjamin for a transfer to a state operated mental health facility. According to the complaint, Brennan allegedly recommended that Benjamin

3

have no further inpatient hospitalization, and no further psychological assessment for continuing hospitalization, despite the fact that Benjamin's medical record was allegedly replete with behaviors consistent with severe mental illness. Thereafter, on April 10, 2000, Dr. Baber discharged Benjamin from Linden Oaks Hospital. Upon discharge, Benjamin was then taken to jail, where Plaintiffs allege that he was deprived of his right to medical care and education.

Apparently while Benjamin was in jail, Gloriana Acolatse ("Acolatse"), a DCFS caseworker, recommended that Benjamin be placed in shelter care at the Center House for Boys. Plaintiffs allege that Benjamin was deprived of his right to medical care and education while at the Center House for Boys. Debbie McEvilly ("McEvilly"), another DCFS caseworker, took over Benjamin's case, and recommended that Benjamin remain in shelter care at the Center House for Boys instead of obtaining the in-patient psychiatric treatment that Benjamin allegedly required. Benjamin remained at the Center House for Boys until May 10, 2000, when Benjamin's treating physician, Dr. Schwartz, allegedly ordered that Benjamin be admitted to Glen Oaks Hospital. However, Plaintiffs allege that Jennifer Beisner ("Beisner"), a DCFS evaluator, blocked Benjamin's admission into Glen Oaks Hospital. According to Plaintiffs, Beisner then called the police and had Benjamin put back in jail, where Benjamin spent two weeks, allegedly without the necessary medical care or education. On May 24, 2000, Benjamin was admitted to Maryville Academy.

Plaintiffs further allege that on September 11, 2001, the Honorable Stanley Austin of the Eighteenth Judicial Circuit, DuPage County, Illinois entered an order finding that, at the time of Benjamin's discharge from Linden Oaks Hospital, Benjamin was a

4

dependent minor and was without proper medical or other remedial care recognized under State law, or other care necessary for his well-being, through no fault, neglect or lack of concern by his parents, guardian, or custodian.

Count III of the First Amended Complaint alleges a medical malpractice claim against Anderson. Count IV alleges that Edward Hospital, Linden Oaks Hospital, and Anderson violated provisions of the Emergency Medical Treatment and Labor Act, 42 U.S.C. §1395dd(b)(1) when they "dumped" Benjamin from Linden Oaks Hospital. In Count V, Plaintiffs allege that Brennan violated 42 U.S.C. §1983. Under Count VI, Plaintiffs further allege violations of 42 U.S.C. §1983 by the Health Department. Counts VII, VIII, IX, and X each allege a violation of 42 U.S.C. §1983 against Jones, Acolatse, McEvilly, and Beisner respectively. Count XI presents a pendent state medical malpractice claim against Linden Oaks Hospital. Count XII alleges a pendent state civil conspiracy claim against all Defendants. Count XIII alleges a pendent claim for intentional infliction of emotional distress against all Defendants. Count XIV requests injunctive relief against DCFS. Lastly, Count XV alleges a violation of 42 U.S.C. §1983 against DCFS employees, Jones, Acolatse, and McEvilly.

## DISCUSSION

When deciding a motion to dismiss, this Court accepts as true all "well-pleaded factual allegations and view[s] them, along with the reasonable inferences to be drawn from them, in the light most favorable to [the plaintiff]." *Cornfield v. Consolidated High School Dist. No. 230*, 991 F.2d 1316, 1324 (7th Cir. 1993). Moreover, we must keep in mind that a "complaint does not fail to state a claim merely because it does not set forth a complete and convincing picture of the alleged wrongdoing." *American Nurses'*

*Association v. State of Illinois*, 783 F.2d 716, 727 (7th Cir. 1986). At the same time, a court must grant a motion to dismiss if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 978 (7th Cir. 1999)("a complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard" of federal notice pleading requirements). In addition, a court is not bound by the legal characterizations that the plaintiff assigns to those facts. *Republic Steel Corp. v. Pennsylvania Engineering Corp.*, 785 F.2d 174, 183 (7th Cir. 1986).

I.  <u>EMTALA Claims</u>

In Count IV, the Plaintiffs allege a claim under the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. §1395(dd) *et seq.* against Defendants Edward Hospital, Linden Oaks Hospital, and Anderson. Furthermore, Plaintiffs appear to allege violations of EMTALA by other individual defendants in this action in their claims brought under 42 U.S.C. §1983.

A.  <u>EMTALA Claim Against Individual Defendants</u>

As an initial matter, EMTALA "creates a cause of action only against a participating hospital. The statutory definition of participating hospital does not encompass an individual physician." *King v. Ahrens*, 16 F.3d 265, 271 (8th Cir. 1994). Plaintiffs concede this point in their response briefs and have agreed to withdraw the EMTALA claim as against Anderson. Accordingly, Plaintiffs have failed to state an EMTALA claim against Anderson, and this Court grants Defendant Anderson's motion to dismiss Count IV against him. Furthermore, Plaintiffs have agreed to withdraw their

claims for a violation of EMTALA in Count X, which is brought under 42 U.S.C. §1983.

While it is not entirely clear what Plaintiffs allege. If Plaintiffs are attempting to allege a

violation of EMTALA through an action under 42 U.S.C. 1983 against individual

defendant Beisner, that claim is also dismissed with prejudice.

B.  EMTALA Claim Against Edward Hospital and Linden Oaks
Hospital

Because the EMTALA claims have been dismissed against the individual

defendants, the remaining EMTALA claims now properly lie only against Edward

Hospital and Linden Oaks Hospital.  Section 42 U.S.C. §1395dd(b)(1) states as follows:

> (b)  Necessary stabilizing treatment for emergency medical conditions and
> labor
>
> > (1)  In general
> > If any individual (whether or not eligible for benefits under this
> > subchapter) comes to a hospital and the hospital determines that the
> > individual has an emergency medical condition, the hospital must
> > provide either -
> >
> > > (A)  within the staff and facilities available at the hospital, for such
> > > further medical examination and such treatment as may be required
> > > to stabilize the medical condition, or
> > >
> > > (B)  for transfer of the individual to another medical facility in
> > > accordance with subsection (c) of this section.

Additionally, 42 U.S.C. §1395dd(e)(3)(A) defines the term "to stabilize" as follows:

> 'To stabilize' means, with respect to an emergency medical condition . . .
> to provide such medical treatment of the condition as may be necessary to
> assure, within reasonable medical probability, that no material
> deterioration of the condition is likely to result from or occur during the
> transfer [which includes the discharge of individuals] of the individual
> from a facility.

Therefore, in order to state a claim under EMTALA, a plaintiff must establish that he "(1) went to the defendant's emergency room (2) with an emergency medical condition, and that the hospital either (3) did not adequately screen him to determine whether he had such a condition, or (4) discharged or transferred him before the emergency condition had been stabilized." *Deberry v. Sherman Hospital Association*, 741 F. Supp. 1302, 1305 (N.D. Ill. 1990).

In this case, Plaintiffs allege that Benjamin "presented to the emergency department at Linden Oaks [Hospital]" on March 23, 2000. Furthermore, the Plaintiffs assert that Dr. Sinha examined Benjamin, determined that he has an "emergency medical condition, and that such condition was a mental illness or emotional disturbance of such severity that hospitalization was necessary and that as such Benjamin was likely to benefit from inpatient treatment, as Benjamin was aggressive and threatening in behavior." Benjamin was then treated for nineteen days at Linden Oaks Hospital, the final nine of which were not covered by Benjamin's insurance. Thereafter, on April 10, 2000, Linden Oaks Hospital discharged Benjamin in an allegedly unstabilized condition.

In sum, Plaintiffs have alleged that Benjamin went to Linden Oaks Hospital's emergency room with an emergency medical condition and that the hospital discharged him before the emergency condition was stabilized. At this point in the litigation, and viewing all of these asserted facts in a light most favorable to the Plaintiffs, Count IV sufficiently states a claim under EMTALA against Linden Oaks Hospital.

Furthermore, Plaintiffs have sufficiently stated a claim against Edward Hospital for a violation of EMTALA because Edward Hospital is the parent company of Linden Oaks Hospital. Plaintiffs have alleged that Edward Hospital created and owns Linden

8

Oaks Hospital for the purpose of furnishing health care services of a different type than those provided by Edward Hospital. Accordingly, Defendants Edward Hospital's and Linden Oaks Hospital's motion to dismiss Count IV is denied.

II.     Counts Alleging Violations Under §1983

Counts V - X and XV are brought under 42 U.S.C. §1983 ("§1983"). These counts allege that various county and state workers deprived both Benjamin and Mrs. Binkley of certain rights that are protectable under §1983.

In order to state a claim for a violation of 42 U.S.C. 1983, a plaintiff must allege that a defendant's actions were taken under color of state law and that those actions deprived plaintiff of a constitutional right. *Parratt v. Taylor*, 451 U.S. 527 (1981). However, Section 1983 does not delineate constitutional rights. In *Gonzaga v. Doe*, 536 U.S. 273 (2002), the Supreme Court emphasized that:

§1983 merely provides a mechanism for enforcing individual rights 'secured' elsewhere, *i.e.*, rights independently 'secured by the Constitution and laws' of the United States. '[O]ne cannot go into court and claim a 'violation of § 1983'—for § 1983 by itself does not protect anyone against anything.

*Id.* at 284 (citations omitted).

Plaintiffs allege that Defendants, acting under the color of state law, violated "constitutional rights . . .guaranteed to Benjamin under the Fourteenth Amendment to the United States Constitution." Counts V - X, which allege a violation of Benjamin's rights by Beisner, Jones, Acolatse, McEvilly, Brennan, and DuPage County Health Department can be whittled down to three general claims. First, Plaintiffs contend that Benjamin was "involuntarily committed" while at Linden Oaks Hospital, in jail, and at the Center

9

House for Boys ("Center House").  According to the Plaintiffs, because he was involuntarily committed to these places, he had a right to individualized rehabilitative mental health treatment and special education services.

Second, Plaintiffs allege that Beisner, Jones, Acolatse, McEvilly, and Brennan each violated Benjamin's procedural due process rights because, "upon information and belief," none were "qualified certifiers" as defined by law.  Plaintiffs also attempt to hold the DuPage County Health Department liable for allowing unqualified individuals to perform mental health services.  Plaintiffs again assert that Benjamin has a liberty interest to individualized mental health treatment and special education services, and that because the Defendants were not qualified certifiers, he was denied his rights without proper procedure.

Third, Plaintiffs claim that they have a cause of action under § 1983 for the State's alleged violation of conditions imposed upon it by the federal government, associated with federal funds the State received to provide such services.  Specifically, Plaintiffs allege that they have rights under the Federal Developmental Disabilities Act, 42 U.S.C. §15024(c)(G)(5), and 42 U.S.C. §300x-1, which are enforceable under §1983.

Finally, Plaintiffs allege a § 1983 violation against Jones, Acolatse and McEvilly for their alleged wrongful actions against Mrs. Brennan.  Plaintiffs allege that these DCFS workers "indicated" Mrs. Binkley as a child abuser and neglector in an attempt to coerce her into accepting Benjamin for discharge to his home.  Plaintiffs claim that these actions violated Mrs. Brennan's liberty interest.

We will address each of these arguments in turn.

A.    Benjamin's Liberty Interest In Receiving Rehabilitative Mental Health Treatment

Plaintiffs first allege that Benjamin was an involuntarily committed mental patient and had a liberty interest under the Fourteenth Amendment's Due Process Clause to rehabilitative mental health treatment. The Supreme Court has held that the State has an affirmative duty to provide services to the involuntarily committed. *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189 (1989). The *DeShaney* Court held that "the substantive component of the Fourteenth Amendment's Due Process Clause requires the State to provide involuntarily committed mental patients with such services as are necessary to ensure their 'reasonable safety' from themselves and others." *Id.* at 196.

There exists an "affirmative duty by the State actor to provide basic human needs *e.g.*, food, shelter, medical care, and reasonable safety." *Estelle v. Gamble*, 97 S. Ct. 285, 290-91 (1976). However, such "affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf." *Id.* at 290-91.

While it is questionable whether Benjamin was, indeed, involuntarily committed (especially in the Linden Oaks setting) and not free to act on his own behalf, Plaintiffs allege that he was involuntarily committed. At this stage of the litigation, we must accept their allegations as true. Plaintiffs further allege that Benjamin did not receive the individualized care and treatment that he required for his mental condition. Therefore, the Defendants' alleged failure to provide necessary mental health care to Benjamin

11

could be a deprivation of his liberty interest, in violation of his substantive due process rights under the Fourteenth Amendment. Therefore, we believe that Plaintiffs have stated a cause of action for violation of Benjamin's liberty interest, and the motions to dismiss are denied on this ground.

> B.    <u>Procedural Due Process Rights</u>

Plaintiffs next argue that Benjamin's procedural due process rights have been violated because Defendants did not follow the requirements imposed by certain state statutes. These statutes require that, if admission is sought to a State-operated mental health facility, the individual seeking admission must be examined by a "qualified certifier." 405 ILCS 5/3-504 and 3-601.1 In this case, Plaintiffs allege that Defendants Brennan, Beisner, Jones, Acolatse and McEvilly did not possess the qualifications necessary to be a qualified certifier. Thus, Plaintiffs argue that these Defendants had no business making recommendations regarding Benjamin's mental health services.

A State statute can create a liberty interest that could trigger a Constitutional violation for deprivation of procedural due process if fair procedures are not followed to deprive a plaintiff of that interest. *See Kraushaar v. Flanigan*, 45 F.3d 1040, 1048 (7th Cir. 1995). "[C]ourts will find a liberty interest only if the state's statute or regulation used language of an unmistakably mandatory character, requiring that certain procedures 'shall,' 'will' or 'must' be employed." *Kraushaar*, 45 F.3d at 1048.

In this case, the State statutes at issue (405 ILCS 5/3-504 and 3-601.1) do use such mandatory language. Section 5/3-504(a) states that "no minor **shall** be admitted to a State-operated mental health center until a written statement . . . has been obtained from a qualified certifier." Likewise, Section 5/3-601.1 states "[i]f admission is sought

to a State-operated mental health facility . . . the petition **shall** be accompanied by a written statement executed by a qualified certifier." (emphasis added).

Plaintiffs claim that Benjamin was denied procedural due process by the failure to have:  a) a qualified certifier personally examine Benjamin; and b) a written statement executed by a qualified certifier accompany his petition to a State-operated mental health facility.  Because the State statutes in question use mandatory language, we find that these statutes could create a liberty interest that could trigger a Constitutional violation for deprivation of procedural due process if the proper procedures were not followed.  Therefore, Benjamin may have been denied the process due him by having unqualified certifiers examine him and make recommendations about his mental health treatment.

For these reasons, we find that Plaintiffs have stated a cause of action under § 1983 for a violation of procedural due process.

C.    Violation of Conditions Imposed By Federal Law

Next, Plaintiffs allege that they have a cause of action under § 1983 for the State's alleged violation of conditions imposed upon it by the federal government in conjunction with federal funds the State receives to provide mental health services.

Plaintiffs may have rights under the Federal Developmental Disabilities Act, which are enforceable under §1983.  *Mihalcik v. Lensink,* 732 F. Supp. 299, 303-04 (D.Conn.1990).  At least one court has held that a State's failure to provide such required services violated the Federal Developmental Disabilities Act, which gives rise to a private right of action under § 1983.  *See, e.g., Martin v. Voinovich*, 840 F. Supp. 1175, 1203-04 (S.D. Ohio 1993).

In this case, Plaintiffs allege that the State actors failed to provide Benjamin with comprehensive community based mental health services. As mentioned above, a State's failure to provide such required services can give rise to a private cause of action under § 1983 for the State's violation of conditions imposed upon it by the federal government, associated with federal funds the State receives to provide such services. *See Martin,* 840 F. Supp. 1175; *Mihalcik,* 732 F. Supp. 299. Therefore, Defendants' motions to dismiss Plaintiffs' §1983 claims on this ground are denied.

D.    <u>Mrs. Brennan's Liberty Interest</u>

Finally, Plaintiffs allege a violation of § 1983 because DCFS "indicated" Mrs. Binkley as a child abuser and neglector, based upon the recommendation of Jones, Acolatse, and McEvilly. DCFS allegedly placed Mrs. Binkley's name in the State registry of "indicated" child abusers, under the Abused and Neglected Child Reporting Act, 325 ILCS 5/1, et. seq.

Courts have held that a person has a liberty interest in not being listed as a child abuser and neglector, because that would damage a person's reputation. *See Bohn v. Dakota County,* 772 F.2d 1433, 1436, n.4 (8th Cir. 1985); *Cavarretta v. DCFS,* 277 Ill. App. 3d 16, 24-25 (2nd Dist. 1996). In *Cavarretta,* the Court held that DCFS violated a person's liberty interest when it placed the person's name in the State registry of "indicated" child abusers. 277 Ill. App. 3d at 24-25.

We conclude that Mrs. Brennan's reputation and liberty interest could have been violated by the actions of the DCFS personnel in wrongfully reporting her as a child abuser and neglector. Therefore, we find that Plaintiffs have stated a cause of action under § 1983 for a violation of Mrs. Brennan's liberty interest.

14

E.    DuPage County Health Department's Motion

Defendant DuPage County Health Department argues that it cannot be held liable under § 1983 because it is not vicariously liable for the torts of its employees. It is well established that the "language of § 1983 . . . cannot be easily read to impose liability vicariously on governing bodies solely on the basis of the existence of an employer-employee relationship with a tortfeasor." *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658 (1978).

However, when the execution of a government's policy or custom, whether made by its lawmakers or by those whose acts may fairly be said to represent official policy, inflicts the injury, the government as an entity is responsible under § 1983. *Monell* at 694. "The plaintiff who wants a judgment against the municipality under [Section 1983] must be able to trace the action of the employees who actually injured him to a policy or other action of the municipality itself." *Bethesda Lutheran Homes and Services, Inc. v. Leean*, 154 F.3d 716, 718 (7th Cir. 1998).

Here, Plaintiffs have alleged independent improper actions on behalf of the Health Department itself which could constitute a custom or policy. Plaintiffs allege that the Health Department intentionally allowed unqualified individuals to perform mental health evaluations, ensured that its mental health evaluators do not classify people as mentally ill and failed to maintain appropriate community mental health facilities. Plaintiffs allege that these actions are the standard operating procedure of the Health Department. We find that these allegations sufficiently allege that a policy or custom of the municipality itself caused injury to Plaintiffs. For these reasons, DuPage County Health Department's motion to dismiss the § 1983 claims against it is denied.

15

In sum, we conclude that Plaintiffs have properly alleged causes of action for violations of § 1983. Therefore, the motions to dismiss Counts V, VI, VII, VIII, IX, X, and XV for failure to state a cause of action are denied.

### III. Civil Conspiracy

In Count XII, Plaintiffs attempt to state a claim based upon civil conspiracy. Plaintiffs claim that all Defendants participated in "a common scheme to commit an unlawful act or a lawful act in an unlawful manner in order to deprive Benjamin of appropriate medical and psychological care."

In Illinois, civil conspiracy consists of a combination of two or more persons for the purpose of accomplishing, by some collaborating action, either an unlawful purpose or a lawful purpose by unlawful means. *Adcock v. Brakegate, Ltd.*, 164 Ill.2d 54, 62-63 (1994). Plaintiffs need to allege both an agreement between the conspirators and an act in furtherance of the agreement. *Id. See also Webb v. Local 73, Service Employees International Union*, 2002 WL 31049841 (N.D. Ill. 2002).

In this case, Plaintiffs' complaint lacks any factual allegations necessary to establish the nature of the alleged agreement between the Defendants. Moreover, the complaint is devoid of any facts to show how the Defendants worked together to carry out this alleged common scheme. Merely "[l]umping all defendants acts together, [and] adding the word 'conspiracy' adds nothing" to substantiate such a claim. *Stanley v. Litscher*, 213 F.3d 340 (7th Cir. 2000); *Indeck North American Power Fund v. Norweb, Plc.*, 316 Ill. App. 3d 416 (1st Dist. 2000).

For these reasons, we find that Plaintiffs have failed to state a claim for relief based upon civil conspiracy. If discovery should reveal proof of the existence of an

agreement between the parties, Plaintiffs would be able to replead their claim for civil conspiracy at that point. Therefore, Count XII is dismissed against all Defendants.

IV.    Intentional Infliction Of Emotional Distress

Count XIII alleges a cause of action for intentional infliction of emotional distress against all Defendants. In Illinois, a plaintiff asserting an intentional infliction of emotional distress claim must allege that: 1) the defendant's conduct was extreme and outrageous; 2) defendant intended (or knew with high probability) that his or her actions would cause severe emotional distress; and 3) the defendant's conduct in fact caused severe emotional distress. *Welsh v. Commonwealth Edison Co.,* 306 Ill. App. 3d 148, 154, 713 N.E.2d 679 (1999); *Public Finance Corp. v. Davis,* 66 Ill.2d 85 (1976).

In this case, Plaintiffs allege that "Defendants, individually and collectively, abused their position of authority by their direct or indirect reckless, extreme, intentional and outrageous conduct toward Benjamin." We find that, viewing the complaint in the light most favorable to Plaintiffs, the alleged abuse of Benjamin's rights could constitute conduct on the part of Defendants that is extreme in degree and goes beyond all possible bounds of decency. Therefore, we deny the motions to dismiss the intentional infliction of emotional distress claim.

Moreover, Defendants are not afforded immunity under the Illinois Tort Immunity Act, 745 ILCS 10/6-107(a)(1), for this tort because Plaintiffs have alleged bad faith, improper motives and other elements of intentional, willful and wanton misconduct on the part of these Defendants. *See Briggs v. North Shore Sanitary Dist.,* 914 F. Supp. 245, 252 (N.D. Ill. 1996) (Illinois Tort Immunity Act does not protect employees from willful and wanton misconduct).

17

Likewise, we do not believe that Defendants are entitled to immunity under 745 ILCS 10/6-106(a) at this time. Plaintiffs allege that an initial diagnosis of mental illness was made at Linden Oaks Hospital and that the subsequent examinations of Benjamin were not properly made. Some courts have held that once an initial diagnosis is made and treatment prescribed for it, there is no immunity if the subsequent prescription or examination was incorrectly made. *See American Nat. Bank & Trust Co. of Chicago v. Cook County*, 327 Ill. App. 3d 212, 213 (1st Dist. 2001).

Therefore, we deny the motions to dismiss the intentional infliction of emotional distress claims on the basis of immunity. However, this issue can be revisited at the summary judgment stage after the completion of discovery.

## V. Injunctive Relief

In Count XIV of the complaint, Plaintiffs seek a preliminary injunction against Defendant DCFS requesting: 1) that DCFS fulfill its statutory mandate to provide community based outpatient treatment for severe mental illness in DuPage County; 2) a copy of Plaintiffs' records; 3) payment of Plaintiffs' medical bills; and 4) a retraction of its alleged previous finding that Mrs. Binkley is a child abuser and neglector.

In order to obtain a preliminary injunction, a plaintiff must show: 1) he has no adequate remedy at law or will suffer irreparable harm if the injunction is denied; 2) balance of harms in favor of the plaintiff; 3) a likelihood of success on the merits; and 4) issuance of the injunction will not harm the public's interest. *Roland Machinery Co. v. Dresser Industries, Inc.*, 749 F.2d 380, 382-83 (7th Cir. 1984).

In this case, Plaintiffs have failed to plead any of the necessary elements of a preliminary injunction. For this reason, the motion to dismiss Count XIV is granted.

## VI.    Eleventh Amendment And Sovereign Immunity

Defendants DCFS, Jones, Acolatse and McEvilly have filed a motion to dismiss the allegations against them on the basis that they are barred by the Eleventh Amendment. The Eleventh Amendment prohibits a federal court from imposing retrospective monetary relief on a State for past violation of a federal law. *Edelman v. Jordan*, 415 U.S. 651, 678 (1974).

DCFS is a State agency. It is established by State statute and is funded by the State. Ill. Rev. Stat. Ch. 23, ¶ 2051, et seq. Therefore, the claims against DCFS and DCFS employees in their official capacities seeking retrospective monetary damages is a suit against the State. The Eleventh Amendment prohibits this Court from granting Plaintiffs the retrospective money damages they seek from DCFS and the DCFS employees in their official capacities. Therefore, the federal claims against DCFS and against the individual DCFS employees in their official capacities are dismissed for lack of subject matter jurisdiction.

However, Plaintiffs also have filed suit against DCFS employees Jones, Acolatse, and McEvilly in their individual capacities. Many courts have held that the Eleventh Amendment is not a bar to a suit against State actors in their individual capacities. *See, e.g., Haler v. Melo,* 502 U.S. 21, 30-31 (1991). Therefore, the DCFS Defendants' motion to dismiss the federal claims against them in their individual capacities is denied.

The DCFS Defendants next argue that they are immune from the state law claims of conspiracy and intentional infliction of emotional distress under the doctrine of sovereign immunity. Sovereign immunity "protects the State from interference in its

performance of the functions of government and preserves its control over State coffers." *Send Park Nursing Ctr. v. Miller*, 104 Ill.2d 169, 188 (1984).

The Illinois State Lawsuit Immunity act, 745 ILCS 5/1 provides that the State of Illinois is immune from suit in any court, except as provided in the Illinois Court of Claims Act, 705 ILCS 505/8, which vests jurisdiction over state tort claims against the State in the Illinois Court of Claims. It is clear that these state immunity rules apply to Plaintiffs' state law claims in federal court. *See Reichmann v. Sheahan*, 270 F.3d 430, 441 (7th Cir. 2001).

For these reasons, we find that DCFS and its employees are entitled to sovereign immunity on the state law claims in Counts XII and XIII. These claims must be pursued in state court regardless of any subject matter jurisdiction we have over federal claims in this court. *See Centagon, Inc. v. Sheahan,* 142 F. Supp.2d 1077, 1083 (N.D. Ill 2001). Therefore, Counts XII and XIII are dismissed against DCFS, Jones, McEvilly, and Acolatse.

VII.   Qualified Immunity

Defendants Jones, McEvilly and Acolatse next argue that they are entitled to qualified immunity. Qualified immunity protects government officials from individual liability under § 1983 for actions taken while performing discretionary functions, unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 812 (1982). Therefore, before defendants can be liable, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

20

In this case, Plaintiffs allege that these DCFS employees performed evaluations of Benjamin and made recommendations knowing them to be false. Plaintiffs allege that Jones recommended that Mrs. Brennan be indicated for child abuse, when she knew that fact to be false. Plaintiffs allege that Jones had Benjamin sent to jail when she knew he did not belong there. In the end, it may turn out that the DCFS employees were merely doing their jobs conducting evaluations and making recommendations. However, it may also turn out that they knowingly made false and wrong recommendations in order to harm Plaintiffs and deny them of their constitutional rights.

In this case, we do not yet know enough facts to determine whether clearly established rules of law were violated. Once the facts are uncovered, the DCFS employees' actions "may turn out to be so severe and obviously wrong that the defendants should have known they were violating . . . [Benjamin's] constitutional rights. *Brokaw v. Mercer County*, 235 F.3d 1000, 1023 (7th Cir. 2000). Therefore, Defendants Jones, McEvilly, and Acolatse's motion to dismiss on the basis of qualified immunity is denied.

VIII.    Medical Malpractice Against Anderson

In Count III, Plaintiffs purport to state a claim for medical malpractice against Defendant Bruce Anderson. However, nowhere in the Complaint do Plaintiffs plead that Mr. Anderson is a physician. Moreover, they do not allege that he provided medical care or owed a duty to comply with the medical standard of care. Therefore, Defendants' motion to dismiss Count III is granted.

## IX. Claims Against Defendants Baber And Sinha

On March 31, 2004, we dismissed Count I (medical malpractice) against Defendant Riaz Baber, Count II (medical malpractice) against Defendant Shoba Sinha, Count XII (civil conspiracy) against Sinha and Baber; and Count XIII (intentional infliction of emotional distress) against Sinha and Baber without prejudice. In our Opinion, we indicated that "at the time we decide the remaining pending motions to dismiss filed by the other defendants in this case, if it is determined that Plaintiffs have adequately alleged federal causes of action against other defendants, we will reconsider whether to exercise supplemental jurisdiction over the state law claims of Defendants Sinha and Baber.

Now that this day is upon us and we have decided that the Complaint does state federal causes of action against other defendants, we will exercise supplemental jurisdiction over the state law claims of Defendants Sinha and Baber. Therefore, Counts I and XIII are reinstated against Defendant Baber. Counts II and XIII are reinstated against Defendant Sinha. We decline to reinstate Count XII (civil conspiracy) because Plaintiffs have failed to adequately allege a cause of action for civil conspiracy as mentioned earlier in this Opinion.

## CONCLUSION

For the foregoing reasons, we grant in part and deny in part the motions to dismiss Plaintiffs' complaint brought by Defendants. Specifically:

Defendants Edward Hospital, Linden Oaks, and Bruce Anderson's motion to dismiss (# 49-1) is granted as to the medical malpractice claims against Anderson (Count III), denied as to EMTALA claims against Edward Hospital and Linden Oaks

Hospital(Count IV), granted as to the EMTALA claims against Anderson (Count IV), granted as to the conspiracy claims (Count XII), and denied as to the intentional infliction of emotional distress claims (Count XIII);

Defendant DuPage County Health Department's motion to dismiss (# 52-1) is denied as to the § 1983 claims (Count VI), denied as to the intentional infliction of emotional distress claim (Count XIII), and granted as to the conspiracy claim (Count XII);

Defendant Jennifer Beisner's motion to dismiss (# 65-1) is granted as to the EMTALA claims in Count X, denied as to the § 1983 claims in Count X, granted as to the conspiracy claim (Count XII), and denied as to the intentional infliction of emotional distress claim (Count XIII);

Defendants Illinois Department of Children and Family Services (DCFS), Debbie McEvilly, Gloriana Acolatse and Margaret Jones' motion to dismiss (# 50-1) is granted as to all federal claims against DCFS and Defendants Jones, McEvilly and Acolatse in their official capacities (Counts VII, VIII, IX, and XV) because such claims are barred by the Eleventh Amendment. However, Counts VII, VIII, IX and XV remain against Defendants Jones, McEvilly and Acolatse in their individual capacities. Counts XII and XIII are dismissed against DCFS, Jones, McEvilly, and Acolatse on the basis of sovereign immunity. Count XIV for preliminary injunction against DCFS is dismissed for failure to state a claim. The motion is denied in all other respects; and

Defendant Stephanie Brennan's motion to dismiss (# 54-1) is denied as to the § 1983 claim (Count V), granted as to the conspiracy claim (Count XII), and denied as to the intentional infliction of emotional distress claim (Count XIII).

Counts II and XIII are reinstated against Defendant Shoba Sinha. Counts I and XIII are reinstated against Defendant Riaz Baber.

This case is set for status on October 21, 2004 at 9:00 a.m.

It is so ordered.

September 30, 2004

Wayne R. Andersen
United States District Judge